DIXON, Judge.
The plaintiff in this expropriation suit appeals, claiming that the compensation awarded the defendant is excessive; the defendant answered the appeal, requesting an increase in the award.
Plaintiff was engaged in the construction of a 500,000 volt electrical transmission line, and expropriated a 200 foot wide right-of-way across some property owned by the defendant. For convenience in designation, defendant’s property has been referred to as Tracts A, B, C and D. Tract A is the homesite of the defendant, and contains 17.89 acres. It has a frontage on State Highway No. 17 of about 700 feet. Only .03 of an acre of the right-of-way expropriated by the plaintiff comes from a corner of Tract A. One of the tall metal towers supporting the transmission line is across the road from defendant’s front yard.
Tract C contains about 25.94 acres, and is connected with Tract A only at the southeast corner. Plaintiff’s right-of-way splits Tract C. Tract B is a 29.57 acre tract lying to the north of Tract C, fronting on Louisiana Highway No. 17, and divided from Tract C by a public graveled road. Tract D lies to the west of Tract C, and contains 52.09 acres. Plaintiff’s right-of-way crosses the northeast corner of Tract D.
The trial court awarded judgment in favor of the defendant for $25,259.30 as compensation, and $5,480.24 expert witness fees.
There was a written opinion by the trial judge. He accepted as correct the testimony of the expert witness, J. Russell Doiron.
The plaintiff complains that Doiron testified that the highest and best use of most of the property appraised was for residential subdivision purposes, instead of farm land. The plaintiff also complains that Doiron appraised the farm land at too high a figure. Doiron fixed the severance damages to the remainder of defendant’s property at $21,199.30. Plaintiff contends that the severance damages were not in excess of $1,525.00.
Doiron made a detailed analysis and report of the values of the property before and after the taking. He valued the land in the homesite at $1,000.00 an acre or $17,230.00. The depreciated replacement cost of defendant’s dwelling was valued at $55,641.00. The other improvments on the homesite were valued at $5,864.00, making a total value on Tract A and its improvements before the taking of $79,735.00.
Only .03 acre of land was taken from Tract A. Severance damages by virtue of the proximity of the Extra High Voltage power transmission line was 15%, or $11,-960.25.
Tract B was appraised at $26,208.00. It had already been subdivided prior to the expropriation. Plaintiff was not aware of the pre-existing subdivision, and appraised the property as farm land. The witness Doiron’s appraisal was based on various values placed on homesites arranged in the manner he thought most advantageous. Depending on the size and location of the homesites, he attributed a value of from $750.00 to $1,000.00 an acre to this property.
*824 Tract C was likewise appraised by Doi-ron as residential property at $750.00 an acre, or a total of $19,455.00.
Tract D was appraised by Doiron as farm land and valued at $350.00 an acre, or $18,231.50.
In appraising the damages to the property as a result of the construction of an E. H.V. transmission line, Doiron testified that in Tract B one lot lay partly within a 200 foot zone on one side of the transmission line, and consequently suffered a diminution in value of 20%, or $561.00.
In Tract C, Doiron testified that each lot would suffer a diminution in value ranging from 25% to 50% as a result of the erection of the 500,000 volt transmission line, or a total damage attributable to Tract C of $7,788.00.
Doiron appraised Tract D as farm land and estimated the consequential damages to Tract D at 5% of its value, or $890.05.
The totals reached by Doiron were $4,-060.50 for the land taken and $21,199.30 for damages to the remainder. The damages amount to 14.7% of the value of the whole property before the expropriation.
No error has been demonstrated in the conclusion of the district court that defendant’s property in Tracts A, B and C should have been valued as residential subdivision property. One tract had been previously subdivided. The trial court, in its reasons for judgment, stated:
“In the opinion of this Court, Tracts A, B and C, because of their location, topography, size, and all other factors, including the marketability of lots, the supply and demand for same in the vicinity of Delhi, the economic factors in this community, had for their highest and best use development as residential property, and that such use is reasonably prospective, reasonably foreseeable in the near future, and in no way speculative or conjectural.”
The record fully supports this conclusion of the trial judge.
Doiron’s appraisal of the farm land involved was higher than that of the plaintiff’s witnesses. The difference was adequately explained in Doiron’s testimony. The trial judge was justified in accepting Doiron’s reasons for the higher appraisal, such as the proximity to Delhi and sales more nearly comparable to the land involved in this case. The record hardly leaves room for a reasonable doubt that the value of defendant’s property will be reduced because of its proximity to this E.H.V. transmission line. Numerous witnesses testified concerning technical and scientific reasons why the presence of the transmission line would or would not be dangerous, would or would not interfere with television or radio reception, and would or would not result in an almost complete loss of use of the property lying in the right-of-way. Whether or not the fears attendant on the location of a 500,000 volt electrical transmission line are based on fact, the record, does establish that the fears exist. The record makes it clear that property near a transmission line such as this will meet with sales resistance. If a prospective buyer has a choice between a home lot near the E.H.V. line and one far from it, he will choose the one far from the line. The defendant’s home has been diminished in value. He thinks his television reception has been affected by the transmission line, and so will prospective purchasers. The plaintiff cannot say that the landscape has been improved by the construction of the line across the defendant’s property. The testimony of the experts is convincing that sal-ability of property for country homesites is reduced by the proximity of E.H.V. transmission lines. Even plaintiff’s own expert witness testified that if he were going to build a $65,000.00 home on lots that were otherwise equal, he would build on the lot that was farthest away from the transmission line.
Plaintiff complains that the “retention value” of the land which comprises the *825 servitude for the transmission line results in the retention by the landowner of rights which are equal to a large percentage of the original value.
The record shows that the value of the naked ownership of land beneath 500,000 volt transmission lines is very little. No buildings can be constructed on the right-of-way. The right-of-way must be kept open for authorized personnel of the owners of the transmission line. Keeping the right-of-way open results in its use by unauthorized persons for such purposes as hunting. We are unable to conclude that the trial judge erred in fixing the value of the land taken.
Plaintiff complains of the substantial sums awarded the defendant for expert witness fees.
It was necessary for the defendant to employ a surveyor who made detailed surveys used in the computation and in the presentation of defendant’s case. The defendant was obligated to pay $2,470.00 for the services of the surveyor. Expert appraisers were not available in the community of Delhi. It was necessary for them to be employed in other places and then to travel to Delhi for their investigation of the property and the community and for their testimony. Doiron charged $600.00 plus $150.00 for each day in court, plus transportation, meals and other expenses for a total of $1,230.24. The defendant was required to pay the appraiser Williams $1,300.00, the witness Kyle $250.00 and the witness Burkhalter $230.00. We find no error in the award of these expert witness fees.
Nor do we find any error in the ruling of the district judge that the defendant has no right to recover his attorney’s fees as an element of damages.
Consequently, the judgment of the district court is affirmed, at the cost of plaintiff-appellant.